FILED

03/23/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0376

DA 20-0376

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 70

KILA SHEPHERD,

Plaintiff and Appellant,

v.

STATE OF MONTANA, ex rel.
DEPARTMENT OF CORRECTIONS,

Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2020-302
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John C. Doubek, Doubek, Pyfer & Storrar, PC, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Helena, Montana

Sarah Mazanec, Drake Law Firm, PC, Helena, Montana

Submitted on Briefs:  January 13, 2021

Decided:   March 23, 2021

Filed:

_____
                    Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Kila Shepherd appeals from the summary judgment order entered by the First Judicial District Court, Lewis and Clark County, dismissing her complaint with prejudice as time-barred. We reverse, addressing the following dispositive issue:

> *Did the District Court err by dismissing Shepherd's claim under the Wrongful Discharge from Employment Act as time-barred?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 These facts were placed before the District Court as undisputed for purposes of summary judgment. Shepherd was employed as Human Resources Director for the Montana Department of Corrections (DOC). On July 23, 2018, DOC informed Shepherd that she was "being considered for termination." Due to potential conflicts of interest, DOC delegated the administrative handling of the matter to the Department of Administration (DOA), which hired an outside investigator. On August 10, 2018, following a pre-termination due process meeting, the State notified Shepherd she was being discharged from her position with the DOC, "effective today." In the termination letter, the State advised Shepherd she could challenge her discharge by filing "a grievance in accordance with Administrative Rules of the State of Montana, 2.21.8010."

¶3 Shepherd filed a grievance the same day as her termination, which was considered to be a request for a "Step III" grievance hearing. Shepherd asserted that her termination of employment was wrongful because of violations of "state and department statutes and policies."

2

¶4 The matter was assigned to a hearing officer with the Office of Administrative Hearings of the Department of Labor and Industry, who conducted a hearing on January 7, 2019. Over a year later, on February 3, 2020, the hearing officer issued a Hearing Summary and Recommended Decision that concluded Shepherd's termination was justified and recommended her grievance be denied. On February 14, 2020, a Final Administrative Decision was issued *In the Matter of the Step III Grievance of Kila K. Shepherd vs. Department of Corrections*, signed by the Director of DOA, which adopted the hearing officer's recommendation. The Decision concluded by stating that Shepherd could "appeal this decision to the Montana District Court under the provisions of the Montana Administrative Procedure Act [MAPA]."

¶5 On March 11, 2020, twenty-six days after the Final Administrative Decision was issued, Shepherd initiated this action by filing a complaint in District Court against the State of Montana, DOC.

¶6 DOC moved for summary judgment, arguing Shepherd's claim under the Wrongful Discharge from Employment Act (WDEA) was time-barred under § 39-2-911, MCA. The District Court granted DOC's summary judgment motion and dismissed Shepherd's complaint with prejudice.

¶7 The District Court interpreted § 39-2-911, MCA, as tolling the one-year statute of limitations for no more than 120 days while administrative remedies are exhausted. The District Court held that if the administrative remedies are not concluded within 90 days, they are "considered exhausted." Since Shepherd's grievance procedures took longer than

one year and one hundred twenty days from the date of her termination, the District Court concluded her WDEA claim was untimely.

¶8     Shepherd appeals.[1]

## STANDARD OF REVIEW

¶9     This Court reviews orders granting summary judgment de novo. *Kulm v. Montana State University-Bozeman*, 285 Mont. 328, 331, 948 P.2d 243, 245 (1997). Summary judgment is proper if the pleadings, discovery, disclosure materials, and affidavits show there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). "We review the legal determinations made by a district court as to whether the court erred." *Kulm*, 285 Mont. at 331, 948 P.2d at 245 (citing *Bruner v. Yellowstone Cty.*, 272 Mont. 261, 264-65, 900 P.2d 901, 903 (1995)).

## DISCUSSION

¶10    *Did the District Court err by dismissing Shepherd's claim under the Wrongful Discharge from Employment Act as time-barred?*

¶11    Section 39-2-911, MCA, provides in relevant part:

(1) An action under this part must be filed within 1 year after the date of discharge.

(2) If an employer maintains written internal procedures, other than those specified in 39-2-912, under which an employee may appeal a discharge within the organizational structure of the employer, the employee shall first exhaust those procedures prior to filing an action under this part. The employee's failure to initiate or exhaust available internal procedures is a

---

[1] Shepherd raises other issues in her opposition to DOC's motion for summary judgment. Since we hold that Shepherd's claim was not untimely under the statute, we do not address her other arguments.

defense to an action brought under this part. If the employer's internal procedures are not completed within 90 days from the date the employee initiates the internal procedures, the employee may file an action under this part and for purposes of this subsection the employer's internal procedures are considered exhausted. The limitation period in subsection (1) is tolled until the procedures are exhausted. In no case may the provisions of the employer's internal procedures extend the limitation period in subsection (1) more than 120 days.

¶12 The statute of limitations on a WDEA claim commences on the employee's date of discharge. Section 39-2-911(1), MCA. The parties dispute what constitutes the "date of discharge" in this case, but because the outcome is not affected by the date of discharge, for purposes of this Opinion we consider Shepherd's date of discharge to be August 10, 2018, the date she was presented with the termination letter.

¶13 Since Shepherd's claim was filed beyond the one-year statute of limitations, the issue is whether, and for how long, the limitation period was tolled. Section 39-2-911(2), MCA, requires an employee to exhaust an employer's "written internal procedures" prior to filing an action.[2] The statute also expressly provides that "[t]he limitation period . . . is tolled until the procedures are exhausted." Section 39-2-911(2), MCA. Shepherd commenced her grievance procedure on the same

---

[2] WDEA's one-year limitation period is tolled for internal review of the discharge "[i]f an employer maintains written internal procedures" permitting an employee to "appeal a discharge within the organizational structure of the employer." Section 39-2-911(2), MCA. DOA has implemented general grievance administrative rules and procedures for state employees, while also authorizing each executive branch department to adopt its own internal grievance procedures, and providing, "[i]f the department has not adopted a procedure, the employee shall proceed under this policy." Admin. R. M. 2.21.8011(4) (1997). DOC has apparently not adopted its own internal grievance procedure, ostensibly making DOA's grievance procedure applicable here. The parties do not contest that DOA's grievance procedures constitute the "written internal procedures" of the employer under the WDEA. Section 39-2-911(2), MCA.

day that she was discharged; therefore, the tolling of the limitation period began on the same day that the limitation period would have otherwise commenced.

¶14 Since the statute expressly tolls the limitation period "until the procedures are exhausted," the issue then becomes when the procedures were exhausted, thus restarting the statute of limitations. The District Court held that the procedures were "considered exhausted after ninety days." The District Court based this conclusion on the provision of § 39-2-911(2), MCA, which provides "[i]f the employer's internal procedures are not completed within 90 days from the date the employee initiates the internal procedures, the employee may file an action under this part and for purposes of this subsection the employer's internal procedures are considered exhausted."

¶15 In construing statutes, the Court's role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. We look "to the plain meaning" of the statute's language. *Eldorado Coop Canal Co. v. Hoge*, 2016 MT 145, ¶ 18, 383 Mont. 523, 373 P.3d 836. Nowhere in § 39-2-911(2), MCA, does it state that the procedures are "considered exhausted after ninety days." The statute states that an "employee *may* file an action" if the procedures are not completed within 90 days. Section 39-2-911(2), MCA (emphasis added). The plain meaning of the statute evinces that only if, and when, the employee exercises that option are the grievance procedures considered exhausted. Shepherd elected not to exercise that option, opting instead to fully avail herself of the administrative due process to which she was entitled, as was her right under the statute. Therefore, by the express terms of § 39-2-911(2), MCA, the limitation period was tolled from the date

6

Shepherd initiated the grievance procedures until the Final Administrative Decision was issued on February 14, 2020. Since Shepherd initiated the grievance procedures on the date of her discharge, the limitation period on her WDEA claim effectively commenced on February 14, 2020.

¶16 Although § 39-2-911(2), MCA, expressly provides that the "limitation period . . . is tolled until the procedures are exhausted," and there is no question that the procedures were not exhausted until the Final Administrative Decision was issued on February 14, 2020, DOC argues that the limitation period may only be tolled for up to 120 days, regardless of whether or not the procedures are exhausted. DOC bases its argument on the final sentence of § 39-2-911(2), MCA, which provides that "[i]n no case may the provisions of the employer's internal procedures extend the limitation period . . . more than 120 days." We disagree.

¶17 When the Legislature does not use identical language in different provisions of a statute, it is proper for us to assume that a different statutory meaning was intended. *Zinvest, LLC v. Gunnersfield Enters.*, 2017 MT 284, ¶ 26, 389 Mont. 334, 405 P.3d 1270 (citing *Gregg v. Whitefish City Council*, 2004 MT 262, ¶ 38, 323 Mont. 109, 99 P.3d 151 ("Different language is to be given different construction."); *In re Kesl's Estate*, 117 Mont. 377, 386, 161 P.2d 641, 646 (1945) (citations and internal quotations omitted) ("It is a settled rule of statutory construction that, where different language is used in the same connection in different parts of a statute, it is presumed the legislature intended a different meaning and effect.")).

7

¶18 Throughout § 39-2-911(2), MCA, the Legislature makes multiple references to the "procedures" of a wrongful discharge grievance. Those "procedures" are the process in which an employee actively engages when appealing a discharge. In only one place—the final sentence upon which DOC bases its argument that Shepherd's claim is time-barred—does the statute explicitly use the phrase "*the provisions* of the employer's internal procedures." Section 39-2-911(2), MCA (emphasis added).

¶19 "Provisions" is not a word devoid of meaning, nor is it merely synonymous or redundant of the word "procedures." Black's Law Dictionary defines "provision" as "[a] clause in a statute, contract, or other legal instrument." *Provision, Black's Law Dictionary* (11th ed. 2019). This definition is consistent with how we have employed the word in our case law. Though we have not interpreted the word within the context of this particular statute, our case law is replete with examples consistent with this definition. *See, e.g., Plakorus v. University of Montana*, 2020 MT 312, ¶ 16, 402 Mont. 263, 477 P.3d 311 ("A party's claim sounds in contract if it relates to the violation of a specific contractual *provision*.") (Emphasis added); *Dundas v. Winter Sports, Inc.*, 2017 MT 269, ¶ 12, 389 Mont. 223, 410 P.3d 177 (discussing the "express *provisions* of the Employee Handbook" relative to a WDEA claim) (emphasis added).

¶20 The "*provisions* of the employer's internal procedures"—i.e., the written terms by which the grievance procedures are conducted—must properly be distinguished from the procedures themselves—i.e., the active engagement in the process of grieving a wrongful discharge in accordance with those provisions. Indeed, the very provisions that govern the conduct of the internal procedures in this case make clear the distinction.

8

Admin. R. M. 2.21.8011(3) provides, in relevant part: "An internal grievance *procedure must be consistent with the provisions* of this policy and at a minimum include all steps contained in ARM 2.21.8017." (Emphasis added.) It is axiomatic that a thing cannot be "consistent" with itself. Contrary to the DOC's argument, therefore, the words "provisions" and "procedures" evince different meanings and purposes.

¶21 Had the legislature intended that "the procedures" themselves could not extend the limitation period more than 120 days, it could have stated exactly that, using the exact same language as it used in every single instance throughout the rest of the statute. If that is what the legislature intended, the final two sentences of § 39-2-911(2), MCA, could have clearly and concisely stated:

> The limitation period in subsection (1) is tolled until the procedures are exhausted. In no case may the procedures toll the limitation period in subsection (1) more than 120 days.

That is not how the statute was written, and it is not the province of this Court to rewrite it.

¶22 The *provisions* of the DOC's written internal procedures are found at Admin. R. M. 2.21.8010, et seq. Relevant to the issue in this case, the provisions pertaining to the various timeframes are set forth at Admin. R. M. 2.21.8017 (Grievance Procedure) and Admin. R. M. 2.21.8018 (Hearing). None of these provisions are implicated in the issue before us, nor does DOC suggest that they are. DOC's argument relies upon the application of an inapposite provision of § 39-2-911(2), MCA, to abrogate an unambiguous

9

tolling provision that expressly states that the limitation period "is tolled until the procedures are exhausted."[3]

## CONCLUSION

¶23    The limitation period on Shepherd's WDEA claim was tolled from the time she commenced her grievance until the grievance procedures were exhausted. Excluding the period during which the limitation period was tolled, Shepherd timely filed her claim well within the one-year statute of limitations. The District Court erred by granting summary judgment to DOC. We reverse and remand to the District Court for further proceedings.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON

Justice Jim Rice, dissenting.

¶24    I believe the Court erred in its analysis and rendered a significantly flawed decision—a common occurrence when the Court proffers an original theory not raised in the entirety of the litigation and thus tested by the adversarial process.

---

[3] The dissent erroneously contends that this Opinion "tolls the one-year limitation period indefinitely." Dissent, ¶¶ 24 and 26. This is a fundamental misreading of both this Opinion and § 39-2-911(2), MCA. As § 39-2-911(2), MCA unambiguously states, the limitation period is "tolled until the procedures are exhausted." This may often result in a much shorter tolling period than either the 90 days or 120 days the Dissent advocates. If, for example, Shepherd's grievance procedures were completed in 30 days, that would be the amount of time the limitation period would have been tolled, pursuant to the express language of the statute.

10

¶25 The general rule is that an action under the Wrongful Discharge from Employment Act, § 39-2-901, MCA (WDEA) "must be filed within 1 year after the date of discharge." Section 39-2-911(1), MCA. This one-year limitation period has long been recognized as the prevailing principle and an expression of the Legislature's intent for discharge claims to be promptly litigated. *See Turner v. City of Dillon*, 2020 MT 83, ¶ 17, 399 Mont. 481, 461 P.3d 122 (concluding that claimant "failed to timely file his complaint in the District Court within the one year limitation period, as required by the WDEA," requiring dismissal); *Redfern v. Montana Muffler*, 271 Mont. 333, 335, 896 P.2d 455, 456 (1995) (stating that "[a]n action under the WDEA must be filed within 1 year after the date of discharge") (citing § 39-2-911(1), MCA) (quotations omitted); *Arnold v. Boise Cascade Corp.*, 259 Mont. 259, 264, 856 P.2d 217, 220 (1993) (recognizing that "all actions brought pursuant to [the WDEA] must be filed within one year after the date of discharge"); *Allison v. Jumping Horse Ranch, Inc.*, 225 Mont. 410, 412, 843 P.2d 753, 755 (1992) (stating that "[t]he statute of limitations for bringing a wrongful discharge claim is . . . 1 year after the date of discharge.") (internal citation omitted); *Meech v. Hillhaven W., Inc.*, 238 Mont. 21, 25, 776 P.2d 488, 490 (1989) (recognizing that the WDEA "limits the time for bringing a cause under its provisions to one year from the date of discharge"). It is surprising that the Court now holds the WDEA's one-year limitation period can be indefinitely prolonged—here, by a year and half—and therefore effectively undermined.

¶26 The WDEA provides limited tolling of the one-year limitation period by mandating participation in an employer's written internal procedures following discharge, as follows:

11

If an employer maintains written internal procedures, other than those specified in 39-2-912, under which an employee may appeal a discharge within the organizational structure of the employer, the employee shall first exhaust those procedures prior to filing an action under this part. The employee's failure to initiate or exhaust available internal procedures is a defense to an action brought under this part. If the employer's internal procedures are not completed within 90 days from the date the employee initiates the internal procedures, the employee may file an action under this part and for the purposes of this subsection the employer's internal procedures are considered exhausted. The limitation period [of one year] in subsection (1) is tolled until the procedures are exhausted. *In no case may the provisions of the employer's internal procedures extend the limitation period in subsection (1) more than 120 days*.

Section 39-2-911(2), MCA (emphasis added). The WDEA requires an employee to exhaust an employer's "written internal procedures" prior to filing an action. Section 39-2-911(2), MCA. The Act provides for tolling of the limitation period while the internal process is ongoing but caps the tolling at no more than 120 days and authorizes the employee to file an action after just 90 days if the internal procedures have not been completed, deeming them to be exhausted. Section 39-2-911(2), MCA.

¶27 However, the Court sees fit for the first time in thirty-odd years of litigation that the Legislature inserted a discrete concept within the last sentence of § 39-2-911(2), MCA. The Court reasons that "provisions" are the employer's written policies, which are distinguished from the "procedures" in the policies to be followed when an employee appeals a discharge. Consequently, the last sentence of § 39-2-911(2), MCA, means that the 120-day extension of the limitation period applies *only* if provided by the employer's written policies, not independently effectuated by statute. Opinion, ¶ 21. In other words, the Court concludes that the Legislature, with no explanation of intent, delegated to the employer the exclusive option and authority to toll the statute of limitation for a period of

12

up to 120 days, by way of including such tolling within its written policies and that, otherwise, the 120-day provision has no effect. Consequently, here, because the DOC's policies contain no such tolling requirement, the Court reasons that the last sentence of § 39-2-911(2), MCA, containing 120-day provision, is meaningless. Upon this removal of a maximum tolling time, and its reading of the 90-day exhaustion provision within § 39-2-911(2), MCA, to be effective only upon the employee's election to file an action, the Court concludes that an employee's challenge to her discharge under the internal procedures tolls the one-year limitation period indefinitely. Thus, Shepherd's action here was timely filed within the one-year limitation period that commenced 18 months after her discharge.

¶28    While this interpretation is inconsistent with our precedent, I would first note that "[s]tatutory construction is a 'holistic endeavor' and must account for the statute's text, language, structure, and object." *S.L.H. v. State Comp. Mut. Ins. Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, 15 P.3d 948. "We construe a statute by reading and interpreting the statute as a whole, 'without isolating specific terms from the context in which they are used by the Legislature.'" *State v. Felde*, 2021 MT 1, ¶ 19, 402 Mont. 391, 478 P.3d 825 (citation omitted). Sometimes a court must decide which of several alternative canons of statutory construction must control; here, I believe the Court has erred in not applying the above canons requiring a broad view of the statutory structure, and instead parsing the words "provisions" and "procedures."

¶29    There is no express indication within the WDEA that the Legislature intended to take the unusual step of delegating power to toll the statute of limitation to the employer,

13

and that, upon an employer's failure to require it, the 120-day tolling provision would be of no effect. Such an interpretation is a strained one that fails to acknowledge the "text, language, structure, and object" of the entire provision. *S.L.H.*, ¶ 16. The beginning words of the 120-day tolling provision, "[i]n no case," link that sentence to the language that precedes it; it does not stand alone. Likewise, the Court reads the sentence, "[t]he limitation period in subsection (1) is tolled until the procedures are exhausted," in isolation, concluding it operates independently and indefinitely. However, reading the sentence in context of the entire provision makes clear that, like the 120-day sentence, it is not intended to be read alone; it refers to and follows logically the preceding terms.

¶30 Reading all of the terms of § 39-2-911(2), MCA, together, the Legislature first mandated that discharged employees must "exhaust" the written procedures of the employer (first sentence) and failure to do so is a defense to any action filed against the employer (second sentence). After 90 days, if the employer's procedures are not yet completed, the employee may file an action and the procedures "are considered exhausted," defeating any exhaustion defense (third sentence). Then, adding the concept of tolling, the Legislature provided in two linked sentences that the one-year limitation period "is tolled until the procedures are exhausted. *In no case* may the provisions of the employer's internal procedures extend the limitation period in subsection (1) more than 120 days." (fourth and fifth sentences) (emphasis added). In totality, this paragraph tolls the one-year limitation period until exhaustion occurs in one of three ways: 1) completion of the internal procedures in less than 90 days; 2) if the procedures are "not completed within 90 days," the employee may file an action and "the procedures are considered exhausted" as a matter

14

of law; or 3) the internal procedures continue beyond 90 days without the employee filing an action, in which case tolling continues for up to a maximum of 120 days. "In no case" may the limitation period be extended beyond this ceiling.

¶31 In *Campanella v. Mont. Dep't of Transp.*, 2007 MT 2, ¶ 9 n.2, 335 Mont. 212, 156 P.3d 1, Campanella filed his complaint alleging wrongful discharge "one year and 119 days following his discharge." We stated that "Section 39-2-911(2), MCA, adds the tolling provision, providing that the one-year limitation period can be tolled *for up to* 120 days." *Campanella*, ¶ 10 (emphasis added). We thus explained that "unless Campanella was entitled to the *maximum 120-day extension provided in the statute* for a claimant who had first contested his discharge by pursuing the 'written internal procedures' of the employer, his action would be time barred." *Campanella*, ¶ 9 (emphasis added). Therefore, it is the statute that effectuates tolling, not the employer. Further, and consistent with the statute's proper reading, the maximum time or ceiling for tolling is "up to" 120 days, not 18 months.

¶32 In addition to violating the properly applied canons of statutory construction and our precedent, the Court's holding fails common sense and disconnects from reality. I would venture to say that not a single employer in the State of Montana has attempted to toll the statute of limitations by way of its internal procedures, nor thought it possible.

¶33 I would affirm the District Court. I dissent.

/S/ JIM RICE

Justices Beth Baker and Dirk Sandefur join in the dissenting Opinion of Justice Rice.

/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

15