FILED

08/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0613

DA 23-0613

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 169

STATE OF MONTANA,

      Plaintiff and Appellant,

  v.

COLE LARSON LEVINE,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-22-507
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

            Matthew C. Jennings, Brittany Lynn Williams, Deputy County
Attorneys, Missoula, Montana

      For Appellee:

            Shandor S. Badaruddin, Shandor S. Badaruddin, PC, Missoula, Montana

Submitted on Briefs:  June 5, 2024

Decided:  August 6, 2024

Filed:

_____
                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 The State of Montana appeals from a September 29, 2023 order of the Fourth Judicial District Court pursuant to § 46-20-103(2)(e), MCA. The District Court held that the State's October 3, 2022 search warrant to obtain data from Verizon Wireless related to Cole Levine's phone was a jurisdictionally invalid extraterritorial warrant and thus was void ab initio. We reverse and remand for continuation of proceedings.

¶2 We restate the issue on appeal as follows:

> *Did the District Court err when it found that § 46-5-605(3)(a), MCA, does not confer long-arm jurisdiction on an out-of-state entity unless that entity is doing business with the defendant in the state?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On or about August 14, 2022, Levine moved from New Mexico to Missoula to begin law school at the University of Montana.[1] According to his roommate, Levine went to a bar on the night of August 17.

¶4 Around 2:00 a.m. on August 18, M.H. was sexually assaulted in an alley on her way to a bar. She was able to get free. The man took her phone and ran away but dropped another phone during the struggle. Police were able to identify the owner of the dropped cellphone as Levine.

¶5 On September 9, 2022, after further investigation, the State charged Levine with Attempted Sexual Intercourse Without Consent in violation of § 45-5-503(1), MCA;

---

[1] There has been no plea or trial in this case. A factfinder may ultimately reject facts as presented in the record. We take no position on them and only discuss them as necessary for context.

Attempted Kidnapping in violation of § 45-5-302, MCA; Aggravated Assault in violation of § 45-5-202, MCA; and Criminal Destruction of or Tampering with a Communication Device in violation of § 45-6-105, MCA. On October 3, the District Court issued a search warrant ordering Verizon Wireless to provide the State with data pertaining to Levine's cellphone that was stored on servers in another state.

¶6 Levine filed a motion to suppress the information obtained from the warrant. He argued, among other things, that the warrant was an illegal extraterritorial warrant that was void ab initio because Montana courts do not have jurisdiction to authorize searches out of state and the warrant was issued to an entity in New Jersey. The parties waived a hearing, and the District Court issued its order on the briefs. The District Court agreed that it did not have jurisdiction to issue the search warrant based on the reasoning set forth in *United States v. Webb*, CR 19-121, 2021 U.S. Dist. LEXIS 1009 (D. Mont. Jan. 4, 2021). Unlike in *Webb*, however, the District Court found that the good-faith exception to the exclusionary rule did not apply to warrants issued without jurisdiction and declared it void ab initio, granting Levine's motion to suppress all information obtained from that warrant. The State timely appealed the order granting Levine's motion to suppress.

**STANDARD OF REVIEW**

¶7 We review the grant or denial of a motion to suppress for clear error as to the findings of fact and de novo as to whether the district court correctly interpreted and applied the governing law. *State v. Staker*, 2021 MT 151, ¶ 7, 404 Mont. 307, 489 P.3d 489. The interpretation of a statute is a question of law reviewed de novo. *City of Missoula v. Fox*, 2019 MT 250, ¶ 8, 397 Mont. 388, 450 P.3d 898.

3

**DISCUSSION**

¶8 *Issue: Did the District Court err when it found that § 46-5-605(3)(a), MCA, does not confer long-arm jurisdiction on an out-of-state entity unless that entity is doing business with the defendant in the state?*

¶9 The Montana Constitution confers certain jurisdiction upon district courts, including "such additional jurisdiction as may be delegated by the laws of the United States *or* the state of Montana." Mont. Const. art. VII, § 4 (emphasis added). Montana law generally grants district courts authority to issue search warrants "within this state." Section 46-5-220(2)(b), MCA; *State v. Grussing*, 2022 MT 76, ¶ 9, 408 Mont. 245, 507 P.3d 1152. On its face, this law does not authorize district courts to issue warrants outside of Montana.

¶10 The State argues that the Secure Communications Act (SCA) is a "law of the United States" that delegates additional jurisdiction to Montana courts. The SCA provides that:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures . . . ) by a court of competent jurisdiction.

18 U.S.C. § 2703(a). This statute was meant to ease "investigative delays caused by the cross-jurisdictional nature of the Internet" by authorizing nationwide service of search warrants for electronic evidence stored in a jurisdiction other than the one where the investigation or crime takes place. H.R. Rep. No. 107-236, at 57 (2001). As an example, the House Report states that an investigator in Boston investigating a suspect in Boston might seek that suspect's electronic data held by a third party in California. Prior to the amendment to § 2703, that "investigator would then need to coordinate with agents,

4

prosecutors[,] and judges" in California to obtain a search warrant, which could cause devastating time delays to the investigation. H.R. Rep. No. 107-236, at 57. Thus, the statute "authorize[s] the court with jurisdiction over the investigation to issue the warrant directly, without requiring the intervention of its counterpart in the district where the [third party] is located." H.R. Rep. No. 107-236, at 57. As such, "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants" is authorized by 18 U.S.C. § 2703(a) to require contents of an electronic communication stored in another state if the warrant is issued using state warrant procedures. 18 U.S.C. §§ 2703(a), 2711(3)(B).

¶11 There is no doubt that the District Court here is a court of general criminal jurisdiction generally authorized by law to issue search warrants. Mont. Const. art. VII, § 4; §§ 46-2-201, 46-5-220, MCA. Levine argues that the language "within this state" used in § 46-5-220, MCA, limits the jurisdiction conferred by the SCA. But this argument ignores the plain language of the Constitution and the SCA, which allows laws of the United States to confer additional jurisdiction not provided for in the Constitution or Montana statute.

¶12 Levine further argues that the requirement in 18 U.S.C. § 2703(a) to use state warrant *procedures* also limits the jurisdiction provided by the SCA because § 46-5-220, MCA, limits a district court's general jurisdiction within Montana. But jurisdiction, which is a threshold question of authority, is not the same as procedure. *Gottlob v. DesRosier*, 2020 MT 210, ¶¶ 7–8, 401 Mont. 50, 470 P.3d 188; *see also United States v. Berkos*, 543 F.3d 392, 396–98 (7th Cir. 2008) (holding that 18 U.S.C. § 2703 provided its own

5

jurisdictional authority and did not deprive a federal magistrate judge of jurisdiction although F. R. Civ. P. 41 *generally* limits its jurisdiction within the district because that part of Rule 41 was not procedural).[2] The *procedures* that a district court must follow in issuing a search warrant authorized under the SCA are found, among other places, in § 46-5-221, MCA. Thus, federal law provides jurisdiction to Montana district courts to issue extraterritorial search warrants in specific circumstances. *See* 18 U.S.C. § 2703(a). Nevertheless, courts must still follow Montana warrant procedures, such as § 46-5-221, MCA, when issuing warrants under 18 U.S.C. § 2703.

¶13 Levine's argument is also not supported by other provisions of § 2703. When the Legislature does not use identical language in different provisions of a statute, we presume that a different statutory meaning was intended. *Shepherd v. State ex rel. Dep't of Corr.*, 2021 MT 70, ¶ 17, 403 Mont. 425, 483 P.3d 518. For example, 18 U.S.C. § 2703(b)(1)(B)(i) allows for administrative subpoenas "authorized by a . . . State statute." *See also* 18 U.S.C. § 2703(d) ("In the case of a State governmental authority, such a court order shall not issue [under subsections (b) and (c)] if prohibited by the law of such State."). These provisions clearly mean that state law must authorize or can reject the looser requirements for obtaining a warrant under subsections (b) and (c) (as the Montana Legislature chose to do in 2017 when it passed § 46-5-602, MCA). If Congress did not wish to extend jurisdiction to state courts generally authorized to issue search warrants

---

[2] Every circuit court that has considered this question has followed *Berkos*'s reasoning. *See United States v. Ackies*, 918 F.3d 190, 201–03 (1st Cir. 2019); *United States v. Loera*, 24 F.4th 144, 158 (2d. Cir. 2022); *United States v. Bansal*, 663 F.3d 634, 662 (3d Cir. 2011).

under the laws of a state, then it could have used the same language in § 2703(a) that it did in § 2703(b)(1)(B)(i)—that for a warrant to issue, it must be "authorized by a . . . State statute." Instead, it chose to extend jurisdiction to state courts of competent jurisdiction as long as state warrant *procedures* (*e.g.* § 46-5-221, MCA) were followed. The SCA grants Montana district courts jurisdiction to issue search warrants for electronic communications stored by an out-of-state third party.

¶14 But even if we were to conclude otherwise, Montana law provides a separate jurisdictional basis for the District Court's search warrant. It is well settled that specific statutes prevail over general statutes. *State v. Plouffe*, 2014 MT 183, ¶ 27, 375 Mont. 429, 329 P.3d 1255; *see also* § 1-2-102, MCA. In 2017, the Legislature enacted Title 46, chapter 5, part 6, dealing with search warrants for electronic communications. Section 46-5-602, MCA, specifically sought to tighten the SCA's looser requirements for electronic communications that were older than 180 days under the Montana Constitution's stronger right to privacy. *See generally* Mont. Const. art. II, § 10. A plain language reading of § 46-5-605(3)(a), MCA, provides an independent basis under state law for district courts to authorize search warrants to out-of-state third-party entities:

> A warrant or investigative subpoena under [§] 46-5-602 may be served only on a provider of an electronic communication that is a domestic entity *or* a company or entity otherwise doing business in this state under a contract or a terms of service agreement with *a resident* of this state if any part of that contract or agreement is to be performed in this state.

Section 46-5-605(3)(a), MCA (emphasis added). The District Court properly found that this provision "invoke[s] the state's long-arm jurisdiction" to domestic entities *or* entities doing business in this state with *a resident of Montana*. Nevertheless, the court then stated,

7

without discussion, that "*[t]he residency of the target* is a key delimiter of this statute." (Emphasis added.) Thus, the District Court required the entity to be doing business with "*the* resident"—i.e., the target of the investigation—to extend long-arm jurisdiction to the entity.

¶15 The District Court erred when it added a requirement to § 46-5-605(3)(a), MCA, that the target of the investigation had to be a resident of Montana doing business with the entity to extend long-arm jurisdiction to that entity.[3] *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."). We determine the Legislature's intent by first looking to the plain meaning of words in statutes. *Downs v. Piocos*, 2023 MT 173, ¶ 7, 413 Mont. 269, 537 P.3d 99. We reasonably and logically give words their usual and ordinary meaning. *Downs*, ¶ 7.

¶16 Here, the meaning of the word "a" is "any." *See A*, *The American Heritage Dictionary* 1 (Joseph M. Patwell ed., 3d ed. 1996) ("Used before nouns and noun phrases that denote a single but unspecified person or thing."); *compare The*, *The American Heritage Dictionary* 1859 ("Used before singular or plural nouns and noun phrases that denote particular, specified persons or things.").

---

[3] The federal district court similarly analyzed the statute in *Webb*. We are not bound by a federal court's interpretation of state law. The only precedential value of *Webb* is to the degree that its reasoning appears compelling. *Davis v. State*, 2008 MT 226, ¶ 16, 344 Mont. 300, 187 P.3d 654.

¶17 We presume the Legislature used words in their common and ordinary meaning unless it is made apparent by their character or context that a different meaning was intended. *Great N. Utils. Co. v. Pub. Serv. Comm'n*, 88 Mont. 180, 206, 293 P. 294, 299 (1930); § 1-2-106, MCA. The Legislature clearly intended to extend jurisdiction for search warrants to out-of-state entities to the limits of constitutional long-arm jurisdiction.[4] It is not limited to the conduction of business with a particular resident.

¶18 To read this requirement into the statute without a clear mandate from the Legislature would result in an absurdity. The jurisdictional requirements to prosecute Levine in Montana are found in § 46-2-101, MCA, and the allegations against him fall squarely within that statute, regardless of his New Mexico residency. "We construe, interpret[,] and apply the law so as to avoid absurd results. Statutory construction should not lead to absurd results if a reasonable interpretation would avoid it." *Rios v. Justice Court*, 2006 MT 256, ¶ 9, 334 Mont. 111, 148 P.3d 602 (internal citation omitted). We cannot hold that the Legislature intended for the State to have jurisdiction to prosecute Levine but preclude an otherwise authorized search warrant due to his state of residency.

¶19 Indeed, taking Levine's arguments at face value shows that an absurdity would result if a district court were forced to inquire about the target's residency at the mere application for a search warrant. Residency of an individual is an issue that often needs an evidentiary showing and one's residence "can be changed only by the union of act and

---

[4] No party disputes that Verizon does business with at least one resident of Montana such that it is subject to long-arm jurisdiction under § 46-5-605, MCA.

intent." *E.g.*, *McCone Cnty. Fed. Credit Union v. Gribble*, 2009 MT 290, ¶ 16, 352 Mont. 254, 216 P.3d 206; § 1-1-215(7), MCA.

¶20     Here, there is no dispute that Levine was a New Mexico resident prior to August 14, 2022.  However, by moving to Montana on August 14, Levine may have met the "act" requirement in § 1-1-215(7), MCA.  The question then would focus on Levine's intent when he moved.  This subjective question (which can be evidenced by objective facts) would be difficult to answer without some sort of evidentiary hearing that included Levine. Another issue with Levine's argument arises in a case where police only know the telephone number that was used in a crime and no other facts.  In this hypothetical, the police would not know who the target is and would not be able to show their residency— thus precluding a warrant.

¶21     Levine argues that the legislative history shows the Legislature did not intend to extend jurisdiction to out-of-state entities when it enacted § 46-5-605, MCA.  We disagree. The sponsor of the Bill noted that the law was meant to address search warrants for electronic communications to "third party providers such as Gmail or Verizon." The sponsor discussed the SCA and noted that this Bill was meant to increase protections by laying out the requirements for a warrant because, under the SCA, communications 180 days old or older had a lower expectation of privacy.  The discussion, if anything, makes it clear that non-Montana businesses would be subject to search warrants under the new law.  Nothing in the legislative history discussed that warrant procedures were different for a resident of Montana compared to a non-resident who commits a crime in Montana.

10

¶22 Levine also argues that a prior version of the Bill that eventually became § 46-5-605, MCA, expressly provided for jurisdiction wherever the information was held: "The provider of an electronic communication shall produce all electronic customer data . . . *regardless of where the information is held*." *See* H.B. 148.3, 65th Leg., Reg. Sess. (Mont. 2017); *compare* § 65-5-605(3)(b), MCA (italicized portion omitted). The Legislature sent the first version to the Governor for signing. He returned it with proposed amendments, including striking the above language. He explained that this language "would authorize governmental entities to compel the production of electronic communications information that is stored *outside of the United States*. Such a scenario may violate the laws of *foreign countries* . . . . My amendments strike this language." H.B. 148, Governor's Proposed Amendments at 2 (2017) (emphasis added). The Legislature agreed and struck the language. Nowhere did the Governor or the Legislature anticipate that striking this language would result in any jurisdictional complications anywhere within the United States—their concern was for material located outside of the United States. Indeed, a plain reading of the Governor's letter presumes that warrants would still issue to entities storing electronic communications *within* the United States. We are not persuaded by Levine's arguments concerning the legislative history— especially given the plain meaning of the statute. Section 46-5-605(3)(a), MCA, granted the District Court jurisdiction to issue the October 3 search warrant and the court erred in granting the motion to suppress.[5]

---

[5] Other states have held similarly under their own state law. *See, e.g.*, *In re Search Warrant for Records from AT&T*, 165 A.3d 711 (N.H. 2017); *State v. Rose*, 330 P.3d 680 (Ore. 2014).

¶23    We have acknowledged a good-faith exception under the exclusionary rule. *See City of Cut Bank v. Bird*, 2001 MT 296, ¶ 20, 307 Mont. 460, 38 P.3d 804.  But because the District Court had jurisdiction to issue the search warrant, we need not consider the State's argument that the good-faith exception applies here.  *See State v. Jensen*, 217 Mont. 272, 277–78, 704 P.2d 45, 48 (1985).

## CONCLUSION

¶24    The District Court had jurisdiction to issue the search warrant under the SCA, 18 U.S.C. § 2703(a), and under Montana law, § 46-5-605(3)(a), MCA.  It erred in granting Levine's motion to suppress.

¶25    Reversed and remanded for continuation of proceedings.


                                                    /S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON